UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| MICHAEL JARVIS SHIPP | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | NO. 1:15-cv-0012 |
| | ) | CHIEF JUDGE CRENSHAW |
| JAMES HOLLOWAY | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Michael Jarvis Shipp, proceeding *pro se*, is an inmate at the Northeast Correctional Complex in Mountain City, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against James Holloway, Warden of the West Tennessee State Penitentiary, seeking a writ of habeas corpus.[1]

## I. Background

On May 24, 2011, a jury in Maury County found the Petitioner guilty of first degree premeditated murder and aggravated robbery. (Doc. No. 28-1 at 65-66). He received concurrent sentences of life imprisonment plus eight years. (*Id.* at 67-68). On direct appeal, the Tennessee Court of Criminal Appeals affirmed the convictions. (Doc. No. 28-9). The Petitioner made no further effort to seek direct review of the convictions in the Tennessee Supreme Court. In June 2013, however, he filed a *pro se* petition for state post-conviction relief in the Criminal Court of Maury County. (Doc. No. 28-10 at 3-12). Following the appointment of counsel and an evidentiary hearing, the trial

---

[1] When this action was originally filed, the Petitioner was an inmate at the West Tennessee State Penitentiary. He has since been transferred to his present place of confinement where his custodian is Warden Randy Lee.

1

court denied Petitioner post-conviction relief. (Doc. No. 28-10 at 22-25).

During the pendency of a post-conviction appeal, the Petitioner filed a *pro se* petition for state habeas corpus relief. (Doc. No. 28-21 at 4-12). The Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief (Doc. No. 28-20). Shortly thereafter, the state habeas petition was summarily denied. (Doc. No. 28-21 at 25-27). An appeal of this ruling was then dismissed (Doc. No. 28-22).

## II. Procedural History

On February 19, 2015, the Petitioner initiated this action with the filing of a Petition (Doc. No. 1) for writ of habeas corpus. The Petition consists of six claims. These claims include :

1) the evidence was insufficient to support Petitioner's convictions;

2) trial counsel was ineffective because he failed to
   a) file a motion to suppress Petitioner's statement to the police; and
   b) interview or present witnesses (Tiffany Conger and Deanna Hopkins);[2]

3) post-conviction counsel was ineffective because he failed to
   a) "present and preserve" two alternate theories of ineffective assistance of trial counsel;
   b) subpoena witnesses to testify at the post-conviction evidentiary hearing; and
   c) present all issues during the post-conviction appeal.[3]

By order entered May 5, 2015, the Respondent was directed to file an answer, plead or

---

[2] At trial, the Petitioner was represented by Robert C. Richardson, Jr., a member of the Giles County Bar.

[3] During the post-conviction proceedings, Jacob Hubbell, a member of the Maury County Bar, was appointed to represent the Petitioner.

2

otherwise respond to the Petition. (Doc. No. 14). Presently before the Court is Respondent's Answer (Doc. No. 29), to which the Petitioner has offered no reply.

Having carefully considered the Petition, Respondent's Answer and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Therefore, the Court shall dispose of the Petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### III. Analysis of the Claims

**A.) Non-Cognizable Claims**

The Petitioner has alleged three instances in which his post-conviction counsel was ineffective (Claim Nos. 3a-c). A state post-conviction proceeding is civil, not criminal, in nature. Mitchell v. Wyrick, 727 F.2d 773, 774 (8th Cir.), *cert. denied* 469 U.S. 823 (1984). A state is not constitutionally required to provide convicted felons with a means by which they can collaterally attack their convictions. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). Thus, a federal writ of habeas corpus will not issue when the Petitioner is merely challenging alleged errors or deficiencies related to a state post-conviction proceeding. Kirby v. Dutton, 794 F.2d 245 (6th Cir. 1986).

In this regard, the Petitioner has alleged that his post-conviction attorney was ineffective for failing to "present and preserve" alternate theories of the ineffectiveness of trial counsel (Claim No. 3a), failing to subpoena witnesses to testify for the Petitioner at the post-conviction evidentiary hearing (Claim No. 3b), and failing to present all issues during the post-conviction appeal (Claim No. 3c). Each of these claims assert an error in a proceeding that is collateral to Petitioner's detention rather than the detention itself. Habeas corpus relief is only available if the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a). None of Petitioner's post-conviction claims bring into question the legality of Petitioner's detention. As a consequence, the Petitioner's claims as they relate to post-conviction counsel are not cognizable as free-standing claims. Coleman v. Thompson, 501 U.S. 722, 752 (1991)(There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings); *see also* 28 U.S.C. § 2254(i)("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254").

**B.) Procedurally Defaulted Claim**

A federal district court will not entertain a petition for writ of habeas corpus unless the Petitioner has first exhausted all available state court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine that promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the Petitioner is required to fairly present his claims to every available level of the state court system. Rose v. Lundy, 455 U.S. 509, 518-20 (1982); Lyons v. Stovall, 188 F.3d 327, 331 (6th Cir.1999). The Petitioner must offer the state courts both the factual and legal bases for his claims. McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000). In other words, the Petitioner must present "the same claim under the same theory" to the state courts. Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir. 1987). It is not enough that all the facts necessary to support a federal claim were before the court or that the Petitioner made a somewhat similar state law claim.

4

Anderson v. Harless, 459 U.S. 4,6 (1982). Once Petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Manning v. Alexander, 912 F.2d 878, 883 (6th Cir. 1990).[4]

The Petitioner claims that his trial counsel was ineffective for failing to interview or present witnesses (Claim No. 2b). This claim was addressed by the post-conviction trial court, (Doc. No. 28-10 at 23), but was never raised in the state appellate court for review. (Doc. No. 28-18). Therefore, the Petitioner did not fairly present this claim to every available level of the state court system. Rose, *supra*.

At this late date, the Petitioner is no longer able to raise this issue as a federal claim in state court. *See* Tenn. Code Ann. § 40-30-102(a) (post-conviction petition must be filed "within one year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one year of the date on which the judgment became final") and (c) ("This part contemplates the filing of only one petition for post-conviction relief"). Therefore, by way of procedural default, the Petitioner has technically met the exhaustion requirement with respect to this claim because there are no state court remedies currently available to him for it. Castille v. Peoples, 489 U.S. 346, 351 (1989) (the requirement of exhaustion is satisfied if it is clear that petitioner's claims are now procedurally barred under state law).

The exhaustion of a claim *via* procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from

---

[4] In Tennessee, a Petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also* Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (Rule 39 clearly removed Tennessee Supreme Court review as an antecedent for habeas purposes).

circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a Petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional issues forfeits the right to federal review of those issues, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violations. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner, though, can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he or she must present affirmative evidence or argument on the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The Petitioner suggests here cause for the procedural default of this claim in the state courts is attributable to "Post-Conviction counsel removed theory from Appellate brief to CCA". (Doc. No. 1 at 11). The Petitioner has alleged that post-conviction counsel was ineffective for failing to present all available issues during the post-conviction appeal (Claim No. 3c). As discussed above, this issue is not cognizable as a free-standing claim for habeas relief. However, it may be used to establish cause in a procedural default cause/prejudice analysis. *See* Martinez v. Ryan, 566 U.S. 1, 9 (2012) (inadequate assistance of counsel at initial review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial).

It is noted, however, that the failure of counsel "to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have

6

changed the result of the appeal." McFarland v. Yukins, 356 F.3d 688, 699 (6th Cir. 2004); *see also* Jones v. Barnes, 463 U.S. 745, 754 (1983) (counsel has no constitutional duty to raise every non-frivolous issue requested by the Petitioner). On this question, the Petitioner states simply that he was "denied exhaustion of 'no intent' issue by CCA." (Doc. No. 1 at 8). This conclusory argument is wholly insufficient to show that there is a reasonable probability that inclusion of this issue (Claim No. 2b) would have changed the result of the appeal.

Even in the absence of cause and prejudice, a procedurally defaulted claim can still be reviewed if the failure to do so would result in a fundamental miscarriage of justice, Coleman, 501 U.S. at 750, i.e., the conviction of one who is actually innocent. Gibbs v. United States, 655 F.3d 473, 477 (6th Cir. 2011). In this case, the Petitioner admitted to police that he shot the victim, fled the scene in the victim's car and sold the stereo he took from the car. (Doc. No. 28-4 at 14-18). A miscarriage of justice, therefore, is not established in this instance. As a consequence, the Petitioner has failed to demonstrate that the procedural default of this claim should be excused. Teague v. Lane, 489 U.S. 288, 297-98 (1989) (denial of a claim is appropriate when the federal claim was not raised in the state appellate court for review).

**C.) Fully Exhausted Claims**

The remaining claims, i.e., the sufficiency of the evidence (Claim No. 1) and trial counsel's failure to file a motion to suppress Petitioner's statement to the police (Claim No. 2a), were fully exhausted on either direct appeal or during post-conviction proceedings and were found to be lacking in merit. The availability of federal habeas corpus relief is limited with regard to claims that have been previously adjudicated on the merits in state court. Harrington v. Richter, 562 U.S. 86, 92 (2011). When a claim has been adjudicated on the merits in state court, the state court

7

adjudication will not be disturbed unless it resulted in a decision (1) that was contrary to clearly established federal law; (2) that unreasonably applied clearly established federal law; or (3) involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); Harris v. Stovall, 212 F.3d 940, 942 (6th Cir. 2000).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion different from that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). To grant the writ for an "unreasonable application" of federal law, the Petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. 529 U.S. at 413. In short, the Petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

### Sufficiency of the Evidence

The Petitioner challenges the sufficiency of the evidence to support both the first degree murder and aggravated robbery convictions (Claim No. 1). The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the

8

prosecution. *Id.* at 319.

It is the responsibility of the jury, not the court, to decide what conclusions should be drawn from evidence admitted at trial. Cavazos v. Smith, 565 U.S. 1, 2 (2011). For that reason, within the context of a sufficiency of the evidence claim, a court need only answer "whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012).

On the evening of April 1, 2010, the Petitioner was visiting with friends. Carissa Stone got into an argument with the Petitioner over a cell phone charger. (Doc. No. 28-2 at 80). When Ms. Stone realized that she was in the wrong, she tried to apologize to the Petitioner, but he would not accept her apology. Ms. Stone telephoned her boyfriend (Howard Baugh) and told him about the dispute. Her boyfriend drove to the house and attempted to diffuse the situation. Everyone but the Petitioner and Howard Baugh were in the house as the pair began talking outside. Shortly thereafter, shots rang out. (*Id.* at pg. 91).

Testimony was presented that the Petitioner then re-entered the house. (*Id.* at 94). A friend (Jonathan Martin) gave the Petitioner another handgun and he went back outside. (*Id.* at 95). A witness testified that he saw the Petitioner walk up to the victim (Howard Baugh) as he lay wounded on his stomach on the ground, load the weapon, and shoot him two more times in the back. (Doc. No. 28-3 at 21-39). The Petitioner then fled the scene with his friend in Baugh's car. (*Id.* at 31). It was later discovered that a stereo and GPS system were missing from the car. (*Id.* at 48).

The Petitioner was taken into custody. During an interview with the police, he initially denied but then admitted being at the house at the time of the shooting. (Doc. No. 28-4 at 9). He acknowledged insulting Ms. Stone and told an officer that Baugh "reached over and grabbed him

9

and threw him to the ground." Petitioner told the officer that he reached for a gun that was lying on the ground and shot the victim three or four times. Petitioner also admitted to re-entering the house to get his friend but denied getting another weapon. He claims that he and his friend then drove off in the victim's car. (*Id.* at 12-15). The Petitioner did admit to removing the car's stereo system and selling it to a stranger. (*Id.* at 18).

From this evidence, it is clear that a juror could find beyond a reasonable doubt that the Petitioner intended to, and did in fact, shoot the victim to death. Moreover, having shot Baugh to death, Petitioner's admission that he removed the car's stereo system and sold it to a stranger is sufficient to support a finding of aggravated robbery. (Tenn. Code Ann. § 39-13-402) (aggravated robbery is a robbery accomplished either with a deadly weapon or where the victim suffers serious bodily injury). For that reason, Petitioner's sufficiency of the evidence claim has no merit.

### Ineffective Assistance of Counsel

Petitioner's final claim is that trial counsel had been ineffective for failing to file a motion to suppress his statement to the police (Claim No. 2a). The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. Missouri v. Frye, 566 U.S. 133, 138 (2012). To establish a violation, the Petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient *and* that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984). A deficiency occurs when counsel has acted in a way that falls below an objective standard of reasonableness under prevailing professional norms. (*Id.* at 688). Prejudice arises when there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. (*Id.* at 694).

Where the issue is one of ineffective assistance of counsel, review under the Anti-Terrorism

and Effective Death Penalty Act is "doubly deferential," Cullen v. Pinholster, 563 U.S. 170, 190 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, at 690.

Following his arrest, the Petitioner gave the police an oral and written statement. The written statement, in its entirety, reads "So Y'all Gone Hold me for trying to protect my life." (Doc. No. 28-5 at 36). During his oral statement, the Petitioner admitted to wrestling with the victim, reaching for a gun and shooting him three to four times. He further acknowledged leaving the scene in the victim's car, throwing the gun away and selling a stereo taken from the car.[5] (Doc. No. 28-4 at 12-18).

In order to succeed on this claim, the Petitioner must show both that, had a motion to suppress been filed, there was a reasonable probability that the Petitioner's statements would have been suppressed and the outcome of the trial would have been different had the statements been suppressed. Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

Before taking the Petitioner's statements, the police informed him of his Miranda rights. (Doc. No. 28-5 at 37). Counsel reviewed the statements, conducted some research, and determined that a motion to suppress would be futile. (Doc. No. 28-12 at 112-119). Moreover, Petitioner never asked his attorney to seek suppression of his statements. (*Id.* at 122). It appears, therefore, that the statements were knowingly and voluntarily made without undue influence or coercion.

Once counsel determined that he would not be able to suppress the Petitioner's statements, he decided "to make the best of a bad situation." (*Id.* at 121). The victim was a much larger and

---

[5] The car actually belonged to Katricia Lowery, who had lent the car to the victim that evening. (Doc. No. 28-3 at pg. 48).

11

stronger individual that the Petitioner. The victim had thrown the Petitioner to the ground and had apparently brought the pistol that was used by the Petitioner to shoot him. Petitioner's statements supported the theory that he was merely, at least at the beginning of the fight, protecting himself. Counsel, therefore, developed a defense strategy of self-defense centered around the Petitioner's statements. ("It was a tactical decision on how best to play that") (*Id*.). Given the circumstances of the case, it was sound trial strategy to use the statements to advance the theory that the Petitioner shot the victim in self-defense. Thus, counsel was not deficient for failing to file a motion to suppress Petitioner's statements.

Nor is there a reasonable expectation that the outcome of the trial would have been different had the evidence been suppressed. In Strickland, reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. The likelihood of a different result must be substantial, and not just conceivable. Harrington, 562 U.S. at 111-112. In this instance, there is direct and indirect evidence of Petitioner's guilt. The testimony of two witnesses, Carissa Stone and her brother, Charles Stone, put the Petitioner at the crime scene talking to the victim. A short time later, shots rang out. The Petitioner was later seen loading a gun, shooting the victim in the back as he lay wounded on the ground and fleeing the scene in the victim's car. The evidence was more than sufficient, even without the Petitioner's statements, to allow the jury to find him guilty of the charges. This claim, therefore, also lacks merit.

## IV. CONCLUSION

The Petitioner's claims related to the effectiveness of post-conviction counsel (Claim Nos. 3a-c) are not cognizable. His claim alleging the ineffectiveness of trial counsel for failing to interview and present witnesses (Claim No. 2b) fails because its procedural default is unexcused.

The state courts determined that the Petitioner's fully exhausted claims, i.e., the insufficiency of the evidence (Claim No. 1) and the ineffectiveness of trial counsel for failing to file a motion to suppress (Claim No. 2a) lacked merit. The record supports this finding. The Petitioner has failed to rebut the presumption of correctness accorded to the findings of fact made by the state courts with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Nor has he shown in what way the legal conclusions made by the state courts with respect to his exhausted claims are either contrary to or an unreasonable application of federal law. Accordingly, this action will be dismissed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE